## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **APRIL DAWN HARDIMAN-MARTIN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-23-23-STE |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### I.  PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 20-32). The Appeals Council

denied Plaintiff's request for review. (TR. 5-7). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 25, 2020, the alleged onset date. (TR. 23). At step two, the ALJ determined Ms. Hardiman-Martin suffered from severe: ischemia, status post stents, and rheumatoid arthritis. (TR. 23). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 23).

At step four, the ALJ concluded that Ms. Hardiman-Martin retained the residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) except lift, carry, push or pull 20 pounds occasionally, 10 pounds frequently; stand up to 2 hours at a time, walk up to 2 hours, for 4 out of 8 hours total combined; sit 6 of 8 hours; never should climb ladders, ropes, or scaffolds; frequent on climbing stairs, balancing or crawling; no exposure to temperature extremes, odors, dusts, gases, poor ventilation, unprotected heights, and dangerous moving machinery.

(TR. 24).

With this RFC, the ALJ concluded that Plaintiff was not capable of performing her past relevant work. (TR. 31). As a result, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 72-74). Given the limitations, the VE

identified three jobs from the Dictionary of Occupational Titles that Plaintiff could perform. (TR. 76-77). The ALJ then adopted the VE's testimony and alternatively concluded, at step five, that that Ms. Hardiman-Martin was not disabled based on her ability to perform the identified jobs. (TR. 32).

### III.   ISSUES PRESENTED

On appeal, Ms. Hardiman-Martin alleges error in the ALJ's failure to properly evaluate the opinions from: (1) Plaintiff's physician, Dr. Nghsep Nguyen and (2) medical expert, Dr. Beverly Yamour. (ECF No. 14:14-22).

### IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh

the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.    THE ALJ'S DUTY TO EVALUATE MEDICAL OPINIONS

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1513a(b)(2), 404.1520c. In doing so, the ALJ need only articulate how persuasive she finds the medical opinion. 20 C.F.R. § 404.1520c(b). Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how she considered those factors. 20 C.F.R. § 404.1520c(b)(2) & (c)(1)-(2). "Supportability" refers to the ALJ examining the medical source's own medical evidence and supporting explanations to determine whether the source's opinion (based on the evidence) are persuasive. 20 C.F.R. § 404.1520c(c)(1). "Consistency" involves comparing the medical source's opinion with other medical evidence and prior administrative finding to see whether the opinions and evidence are consistent. 20 C.F.R. § 404.1520c(c)(2).

In addition, the ALJ may, but is not required to, discuss other considerations that may bear on the persuasiveness of a medical opinion, such as the relationship of the source to the claimant, the source's area of specialization, and other factors such as the source's familiarity with the disability program's policies and evidentiary requirements. *See* 20 C.F.R. § 404.1520c(c)(3)-(5). The ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Finally, the ALJ may not selectively review any medical opinion and must provide a proper explanation to support her findings. *See Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). And if the ALJ rejects an opinion completely, she must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

## VI.  THE ALJ'S EVALUATION OF MEDICAL OPNIONS FROM DR. NGYUEN AND DR. YAMOUR

The Court finds: (1) the ALJ committed legal error in evaluating the opinion from Dr. Nguyen and (2) the ALJ's reliance on Dr. Yamour's opinion lacked substantial evidence.

### A.  Dr. Ngyuen's Opinion and the ALJ's Related Evaluation

On May 4, 2022, Plaintiff's primary care physician, Dr. Ngyuen, completed a "Physical Assessment" form for Ms. Hardiman-Martin, outlining her diagnoses and related limitations. *See* TR. 659-660. Dr. Nguyen stated that Plaintiff suffered from COPD, rheumatoid arthritis, hypertension, coronary artery disease, depression, and anxiety, and that these conditions would "often" interfere with her ability to concentrate and maintain attention required to perform simple, work-related tasks. (TR. 659). Dr. Ngyuen also opined that Ms. Hardiman-Martin could:

- Frequently lift less than 10 pounds;
- Occasionally lift 10 pounds;
- Sit for 4 hours during an 8-hour workday;

5

- Stand/walk for 1 hour during an 8-hour work day;

- Walk for less than 1 city block without needing to rest or experiencing significant pain; and

- Use both upper extremities only 50% of the time—which included using her hands for grasping, turning or twisting objects; using her fingers for fine manipulation; and using her arms for reaching.

(TR. 659). Finally, Dr. Ngyuen stated that Plaintiff would need to take excessive/unscheduled 5 minute breaks during the workday every 2-3 hours, and that based on her impairments, she would likely be absent from work 3-4 times per month. (TR. 659-660).

> The ALJ acknowledged Dr. Ngyuen's opinion, but rejected it, stating:
>
> The Administrative Law Judge finds this opinion not persuasive as not well supported by or consistent with the medical evidence of record. The doctor is a specialist who has treated the claimant but the doctor began seeing the claimant in December 2021, well after the alleged onset date. The doctor provided no written details on the checklist form completed, other than to note diagnoses of COPD, rheumatoid arthritis, hypertension, myocardial infarction, coronary artery disease, depression, and anxiety. The physician treated the claimant mostly for her bronchitis, pneumonia, COPD, and abdominal pain (Exhibits 18F, 22F). Although the doctor prescribed Zoloft and assessed the claimant with depression and anxiety on December 22, 2021 (Exhibit 18F/11), the exam showed normal psychiatric findings and the claimant testified she obtains no mental health treatment and takes no mental health medication. The doctors' records do not support the degree of limitation opined by Dr. Nguyen, with exams showing mild bilateral breath sounds but normal heart and respiratory findings, normal muscle tone and mass, normal abdominal findings, normal psychiatric findings, no wheezing, rhonchi, or rales, and unremarkable effort with no respiratory distress. The doctor's neck exams showed bilateral lymphadenopathy (Exhibit 22F/4).

(TR. 30).

### B. Error in the ALJ's Evaluation of Dr. Ngyuen's Opinion

Plaintiff presents two challenges to the ALJ's evaluation of Dr. Ngyuen's opinion—(1) that the ALJ summarily dismissed the physician's opinion without the requisite legal analysis and (2) the explanations provided by the ALJ were improper. (ECF No. 14:19-22). The Court agrees with Plaintiff's first assertion, obviating the need to address the latter contention.

As discussed, the ALJ was required to explain how persuasive she deemed Dr. Ngyuen's opinion by specifically discussing the factors relating to "supportability" and "consistency." *See supra*. Arguably, the ALJ fulfilled this duty related to explaining the factor of "supportability" when she rejected Dr. Ngyuen's opinion by: (1) finding that he provided no written details on the checklist form completed, other than to note Plaintiff's diagnoses and (2) citing specific evidence from Dr. Ngyuen that the ALJ believed did not support the limitations opined. However, the Court agrees with Ms. Hardiman-Martin that the ALJ erred in failing to explain the "consistency" factor—i.e.—the ALJ did not compare Dr. Ngyuen's opinion with other medical evidence and prior administrative findings to see whether the opinions and evidence were consistent. *See* 20 C.F.R. § 404.1520c(c)(1). This failure warrants remand. *See Steele v. Kijakazi*, No. CIV020-436-JFH-SPS, 2022 WL 893122, at *5 (E.D. Okla. Feb. 24, 2022) (reversing and remanding based on ALJ's failure to evaluate the "consistency" of a medical opinion).

### C. Dr. Yamour's Opinion and the ALJ's Related Evaluation

At the administrative hearing, Dr. Yamour stated that she had reviewed Exhibits 1F-20F prior to testifying. (TR. 47). Dr. Yamour then proceeded to discuss Plaintiff's

7

medical history, including cardiovascular related events, a head injury, abdominal pain, and back pain and stiffness. (TR. 48-49). In doing so, Dr. Yamour concluded that Plaintiff did not meet or equal a listed impairment, after specifically considering Listing 4.04. (TR. 49-50). Ultimately, Dr. Yamour found that Ms. Hardiman-Martin could:

- Lift no more than 20 pounds—10-20 pounds occasionally and less than 10 pounds frequently;
- Sit for 6 hours per day;
- Stand or walk for 2 hours each, for a total of 4 hours per day;
- Not be on a ladder or scaffolding;
- Not work with dangerous machinery;
- Not be exposed to temperature extremes or fumes.

(TR. 51).

The ALJ adopted the findings from Dr. Yamour, as reflected in the RFC. *See* TR. 29; *compare* TR. 24 *with* TR. 51. In doing so, the ALJ stated:

> Beverly Yamour, M.D., an impartial medical expert, testified the claimant has the residual functional capacity found herein. The Administrative Law Judge finds this opinion to be the most persuasive as well supported by and consistent with the medical evidence of record considered as a whole and with the claimant's statements. The examination records well support the doctor's opinion, as detailed above. The doctor is a specialist familiar with Social Security Administration regulations and she reviewed most of the medical evidence prior to testifying.

(TR. 29).

### 1. Plaintiff's Arguments

Under the rubric of challenging the ALJ's reliance on Dr. Yamour's opinion, Ms. Hardiman-Martin argues: (1) the ALJ erred in considering the persuasiveness of the

opinion; (2) Dr. Yamour's opinion lacked substantial evidence because it was not based on the entire medical record; and (3) the RFC is not consistent with Plaintiff's statements.

### 2. Plaintiff's First and Second Arguments

The Court finds that while the ALJ did not commit legal error in evaluating Dr. Yamour's opinion, the ALJ's reliance on Dr. Yamour's opinion lacked substantial evidence.

The Social Security Regulations allow for use of a medical expert, and instruct the ALJ to consider a medical expert's opinion under the rubric of 20 C.F.R. § 404.1520c, "as appropriate." 20 C.F.R. § 4040.1513a. As discussed, § 404.1520c requires the ALJ to consider and explain the factors of "consistency" and "supportability" when evaluating a medical opinion. *See supra*. However, it would not be "appropriate" to require an ALJ to evaluate the factor of "supportability" when assessing a medical expert's opinion because: (1) that factor refers to the ALJ examining the medical source's own medical evidence and supporting explanations to determine whether the source's opinion is persuasive[1] and (2) the Commissioner's Hearings, Appeals and Litigation Law Manual (HALLEX) provides that an ALJ may not use a medical expert who "has treated the claimant in the past or who has examined the claimant on a consultative basis." HALLEX I-2-5-32. Thus, the Court finds no error in the ALJ's failure to assess the "supportability" of Dr. Yamour's opinion.

---

[1] 20 C.F.R. § 404.1520c(c)(1).

9

Regarding the "consistency" factor, the ALJ was required to determine whether Dr. Yamour's opinion was consistent with other medical evidence and prior administrative findings. *See* 20 C.F.R. § 404.1520c(c)(2). The Court finds that the ALJ fulfilled this duty when she stated that "examination records well support the doctor's opinion, as detailed above." (TR. 29). "As detailed above" presumably refers to the ALJ's recitation of Dr. Yamour's testimony, wherein the ALJ stated:

> Beverly Yamour, M.D., an impartial medical expert, testified the claimant had single vessel coronary disease with a totally occluded right coronary artery with a classic ST elevation myocardial infarction (STEMI) on her EKG. The doctor noted the claimant had no occlusion of the left anterior descending or circumflex arteries. The claimant underwent placement of 2 stents with a percutaneous coronary intervention (PCI) on May 25, 2020, the alleged onset date, due to an acute infarction. The medical expert testified the claimant had a successful angioplasty with restoration of flow (Exhibits 1F, 2F). An October 30, 2020 echocardiogram revealed a normal ejection fraction of 55-60% and a May 27, 2021 echocardiogram showed a normal ejection fraction of 65-70% (Exhibit 2F/3; 14/1; 16F/6). Dr. Yamour stated the claimant reported cervical spine pain but that x-rays showed normal cervical spine findings with no evidence of arthritis (Exhibit 1F/22). The impartial medical expert testified the claimant also reports back pain and stiffness (see, e.g., Exhibit 18F/6, 13).
>
> The medical evidence supports the medical expert's testimony and the residual functional capacity found herein.

(TR. 26). This recitation is sufficient to explain the "consistency" factor and the Court finds no legal error in this regard.

However, as pointed out by Ms. Hardiman-Martin, the medical expert's opinion was not based on the entire medical record. At the hearing, Dr. Yamour stated that she had reviewed Exhibits 1F-20F prior to testifying. (TR. 47). But noticeably absent from Dr. Yamour's review were Exhibits 21F and 22F—the "Physical Assessment" form from Dr. Ngyuen, (which was completed the day after the hearing) and Dr. Nguyen's

10

accompanying treatment records. *See* TR. 659-660. Although the ALJ rejected Dr. Ngyuen's opinion, the ALJ committed legal error in doing so. *See supra*. But even if the ALJ had properly considered Dr. Ngyuen's opinion, the ALJ's reliance on Dr. Yamour's opinion would still lack substantial evidence because it was based on an incomplete review of the record. By relying on Dr. Yamour's opinion regarding Plaintiff's RFC, when Dr. Yamour was not privy to Dr. Nguyen's opinion which contradicted the RFC, the ALJ effectively engaged in improper "picking and choosing" from among the medical findings of record, relying only on those "portions of evidence favorable to [her] position while ignoring other evidence." *See Carpenter* v. Astrue, 537 F.3d 1264, 1265 (10th Cir. 2008). On remand, if the ALJ employs a medical expert, that individual shall evaluate the entire record, including Dr. Ngyuen's opinion, prior to issuing an opinion.

### 3. Plaintiff's Third Argument

In evaluating Dr. Yamour's opinion, the ALJ stated that the expert's opinion was "well supported by and consistent with . . . the claimant's statements." (TR. 29). Ms. Hardiman-Martin challenges this rationale, pointing to inconsistencies between Dr. Yamour's testimony regarding Plaintiff's RFC and Plaintiff's statements regarding her abilities to stand, walk, and reach. (ECF No. 14:16-17). Plaintiff does not make a formal challenge to the ALJ's consideration of her subjective statements, instead stating only that "the ALJ's RFC is not consistent with the Plaintiff's statements." (ECF No. 14:16). The Court interprets this portion of Ms. Hardiman-Martin's argument as challenging the RFC as lacking in substantial evidence. However, a re-evaluation of Dr. Ngyuen's opinion, along with possible use of a medical expert at a subsequent hearing could

affect the RFC. Thus, the Court need not address whether the RFC, as written, was supported by or consistent with Plaintiff's statements, as this issue may be affected on remand. See Watkins v. Barnhart, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on October 10, 2023.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE